UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20622-CR-UNGARO/SIMONTON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DEMETRIUS LAMAR BARROW,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter arose upon Defendant Demetrius Barrow's Motion to Suppress Physical Evidence and Statements (DE # 16). The Honorable Ursula Ungaro, United States District Judge, has referred this matter to the undersigned United States Magistrate Judge (DE # 18). Based upon an Order requiring him to do so, Defendant Barrow filed a Supplement to the Motion which addressed the issue of his reasonable expectation of privacy in the vehicle searched (DE # 19). The Government responded in opposition (DE # 20). An evidentiary hearing was held on November 5, 2010. At the conclusion of the hearing, the undersigned orally announced her findings and her recommendation that the Motion be denied. Defense counsel was advised to order a transcript of the hearing if objections were going to be filed. This Report and Recommendation sets forth in greater detail the Findings of Fact and Conclusions of Law, based upon which the undersigned recommends that the Motion be DENIED.

    I.    **BACKGROUND**

Defendant Demetrius Barrow is charged in a one-count Indictment with being a felon in possession of a firearm and ammunition on or about April 30, 2010 (DE # 1). As described in more detail below, the firearm and ammunition which form the basis for this

charge were seized from a car which Mr. Barrow was next to at the time of his arrest on unrelated grand theft charges. The presently pending motion to suppress alleges that the firearm and ammunition were illegally seized and must be suppressed; and, that any statements he made regarding the firearm must be suppressed as fruit of the unlawful seizure.

## II.    THE POSITIONS OF THE PARTIES

The Defendant contends that the police unlawfully searched Mr. Barrow's car following his arrest; that the loaded firearm found in the car was not in plain view; that there was no other basis upon which the warrantless seizure could be justified; and therefore the firearm and ammunition must be suppressed (DE # 16).

The Government argues in opposition that the firearm was properly seized under the plain view doctrine. Specifically, the Government asserts that when the police arrested Mr. Barrow next to the car, they saw the butt of a gun protruding from beneath a jacket in the back seat of the car. The Government argues that this observation, coupled with their observations of Mr. Barrow walking around the car and leaning into the car, and the knowledge that Mr. Barrow was a convicted felon, established probable cause to seize the weapon as evidence of the crime of being a felon in possession of a weapon; and, since the weapon was concealed from the view of an ordinary observer, they also had probable cause to seize the weapon as evidence of the crime of carrying a concealed weapon.

The parties agreed at both the outset and the conclusion of the hearing that the resolution of this case is determined by whether the Court credits the testimony of the officers that the gun was in plain view at the time of the seizure. Moreover, if the gun was unlawfully seized, the subsequent statements made by the Defendant regarding the

gun were the fruit of the unlawful seizure. There is no dispute that the Defendant was lawfully arrested based upon probable cause to believe he had committed the unrelated grand theft offense. Moreover, at the conclusion of the hearing, the Government agreed that Mr. Barrow had established a reasonable expectation of privacy in the car from which the firearm was seized.

### III.    FINDINGS OF FACT

At the evidentiary hearing, the Government presented the testimony of Miami-Dade Police Detective Nelson Porrua, and introduced into evidence three photographs which depicted the area where the Defendant was arrested, and the car which contained the firearm (GX 1, 2, 3). The Defendant testified on his own behalf to establish a reasonable expectation of privacy in the car. The defense called as witnesses the Defendant's father, Johnny Barrow, and Miami-Dade Police Detective Donald Bohne, Officer Clifton Baldwin, Detective Jason Gambill, and Detective Enrique Suarez. The defense introduced into evidence a copy of the flyer seeking the arrest of the Defendant, which contained a photograph of the Defendant (DX 1). Based upon an evaluation of the demeanor of the witnesses and their opportunity to observe the events at issue, the undersigned credits the testimony of Detective Porrua with respect to the circumstances under which he found the firearm. His testimony was corroborated in all material respects by the testimony of the other officers in a position to observe the events, was not credibly impeached by the testimony of Mr. Barrow, who was not in a good position to observe the discovery of the firearm.

On the afternoon of April 30, 2010, Defendant Demetrius Barrow was at his father's house at 21560 S.W. 122nd Avenue, in Miami, Florida. He had driven there in his wife's car, which he was using with her permission. Mr. Barrow was wanted by the

police in connection with a grand theft auto charge, and a flyer seeking his arrest and stating that he was possibly armed with a firearm, had been distributed to members of the Special Enforcement Team ("SET") as well as other officers of the Miami-Dade Police Department ("MDPD") (DX1).  On that day, Detective Bohne received information from an off-duty officer, Detective Galvez, that Mr. Barrow was working on a car at that address.  Detective Bohne drove past the residence and verified that Mr. Barrow was present.

Detective Bohne then parked his unmarked car a short distance away, and called for assistance.  Detectives Porrua, Suarez and Baldwin,[1] who were assigned to SET, had a copy of this flyer when they responded to this call for assistance.  Detective Suarez drove an unmarked police car to the address, with Detectives Porrua and Baldwin as passengers in the car, along with a suspect who he had just arrested for an unrelated possession of marijuana charge.  Detective Porrua was aware that Defendant Barrow was a convicted felon because Barrow's criminal history had been checked to determine the threat level.

When they arrived at the address, Detective Suarez parked outside the fence surrounding the residence, next to the open gate depicted in GX 1.  When he saw Detective Suarez arrive, Detective Bohne moved his car next to the fence as well.  All of the detectives saw the Defendant's car in the yard, with all of the doors and the trunk open.  The radio was playing very loud music that could be heard in the street.  They saw the Defendant exit from the right front passenger side of the car, lean into the right rear passenger seat, and then walk around the back of the car to the left rear passenger door.  Detectives Porrua and Baldwin left the car and walked through the open gate toward the

---

[1] At the time of the hearing, Detective Baldwin was no longer a detective assigned to the SET team, but was an officer assigned to regular patrol.

Defendant. They were wearing their police raid vests, their badges were visible, and their guns were drawn. It was obvious that they were police officers.[2] Detective Bohne followed behind Detectives Porrua and Baldwin. As they walked up to the Defendant, he started to reach inside the car, and Detective Porrua put the Defendant against the wedge formed by the open left rear passenger door and the car, and handcuffed him. At that point, Detective Porrua looked into the car where Mr. Barrow had been reaching, and saw the black grip, or butt, of a gun sticking out from under a black leather jacket that was on the rear seat of the car. He called out to let the other officers know he had found a gun. Detective Baldwin, who was standing next to Detective Porrua, also saw the gun in this position.

Detective Porrua then gave custody of the Defendant to Detective Bohne, who had followed them inside the gate, and removed the firearm from the car. Detective Bohne took the Defendant back to his police car, and then transported the Defendant to the police station. Detective Porrua removed the ammunition from the chamber and removed the magazine from the weapon. He took the weapon back to his car and placed it into an evidence bag. The officers turned off the radio, and conducted a cursory search of the vehicle by looking into the open areas of the car, but did not seize anything or disturb any items in the car.

The police did not take any photographs at the time of the arrest. Approximately

---

[2] Detective Porrua testified that as he approached the car, he said words to the effect of, "Miami-Dade Police, freeze, you're under arrest," but that the Defendant did not respond and continued to walk toward the left rear passenger side of the vehicle, and leaned inside. Based upon the testimony regarding the volume of music blasting out of the car, it is unclear whether the Defendant could hear the police commands. Detective Baldwin testified that when they approached the Defendant, they told the Defendant to put his hands up and let them see his hands, and that the Defendant complied.

five or six hours later, Detective Jason Gambill returned to the scene of the arrest and took photographs of the area of the arrest (GX 1), the exterior of the car (GX2), and the interior back seat of the car (GX 3). Detective Porrua testified that the photographs accurately depicted the scene of the arrest; however, the back seat of the car as depicted in GX3 no longer had the jacket which he testified was covering all but the butt of the gun; and, the back seat contained a case that had not been there before.

The Defendant's father, Johnny Barrow, was sitting outside of his residence, under a tree in the corner of the yard, at the time the police arrived to arrest the Defendant. Detective Gambill spoke to Johnny Barrow when he arrived to take the photographs. Mr. Barrow told him that it took the officers a short time to recover the gun, and that, from where he was sitting, he could not tell where they found the gun. He also denied knowledge of any jacket in the car. At the hearing, Mr. Barrow testified that he and a friend were sitting under the tree at a picnic table, as depicted in GX 2, at the time the police arrived. He saw the officers arrest his son. He testified that after his son was arrested, he saw the police look inside the car for a couple of minutes, and then he saw them find the gun. After the police left, Mr. Barrow went inside his house for a short while, which he estimated was approximately 30 minutes. When he came back outside, he looked inside the car and there was no jacket, and the back seat was pushed forward slightly. The undersigned credits the testimony of Detectives Porrua and Baldwin regarding the fact that they saw the gun when they first approached the Defendant, and that Detective Porrua seized the gun immediately after the Defendant was handcuffed, over the contrary testimony of the defendant's father, Mr. Johnny Barrow. As the photographs demonstrate, Mr. Barrow was seated some distance from the car at the time of the events, and he could not see the side of the car from which the gun was

seized. He may have seen the gun at a later point in time, when it was taken back to the police car, but the unequivocal and consistent testimony of the detectives was that the gun was seen in plain view, albeit partially covered by the jacket, at the time they approached the Defendant. In addition, the undersigned credits the testimony of the detectives that there was a jacket in the back seat of the car which concealed the gun from ordinary view, with only the grip visible. The fact that Mr. Barrow did not see a jacket when he looked in the car some time after the police left does not cast doubt on the testimony of the officers. There was at least one other bystander present at the time of the arrest, and the car was in the yard with open access to anyone who might pass by. Thus, there was ample opportunity for the jacket to be removed.

    IV.    <u>CONCLUSIONS OF LAW</u>

At the outset, the undersigned concludes, as conceded by the Government, that the Defendant has established a reasonable expectation of privacy in the car which he borrowed from his wife and from which the firearm at issue was seized. *United States v. Miller*, 821 F.2d 546 (11th Cir. 1987); *United States v. Brown*, 203 Fed. Appx. 997 (11th Cir. 2006).

The undersigned also concludes that the firearm was lawfully seized from this vehicle under the plain view doctrine. It is well-settled that a law enforcement officer may seize evidence that is in plain view, without a warrant, as long as (1) the officer is lawfully present in the location where the evidence is observed and has a lawful right of access to the evidence; and (2) the incriminating nature of the evidence is immediately apparent. *Horton v. California*, 496 U.S. 128 (1990); *United States v. Smith*, 459 F.3d 1276, 1291-93).

In the case at bar, the Defendant does not challenge the fact that Detectives

7

**Porrua and Baldwin were lawfully present in the open yard of the Defendant's father, and had probable cause to arrest him for grand theft while he was standing next to the car. The Defendant also does not challenge the fact that, if the detectives saw the gun in plain view, they were entitled to seize the weapon.  Moreover, such a challenge would be fruitless, since they knew the Defendant was a convicted felon and therefore it was unlawful for him to possess a weapon; and, his presence in and around the car, including his actions in leaning into the area where the gun was found, was sufficient to establish probable cause to believe that he had at least constructive possession of the weapon.  Moreover, since the firearm was concealed under a jacket, except for the butt of the gun, they had probable cause to arrest him for carrying a concealed weapon.  *L. G. v. State of Florida*, 693 So. 2d 1020, 1021-22 (Fla. Dist. Ct. App. 1997); *Lane v. State of Florida*, 567 So. 2d 1014 (Fla. Dist. Ct. App. 1990).**

**The only challenge mounted by the Defendant is that the firearm was not in plain view; that the Detectives were untruthful in their testimony and that the gun was only discovered after a full search of the car; and, that the search was unlawful.  However, the undersigned has rejected this challenge to the credibility of the detectives, and determined that the detectives saw the partially concealed gun underneath the jacket in the back seat of the car at the time they effected the arrest of the Defendant. Therefore, since the police were lawfully present to arrest the Defendant, had lawful access to the firearm, and the incriminating nature of the firearm was readily apparent, the seizure of the weapon did not violate the Fourth Amendment.  Since the firearm was lawfully seized, any statements the Defendant made following his arrest were not the fruit of an illegal search and seizure, and those statements should not be suppressed.**

**Therefore, it is hereby**

8

**RECOMMENDED** that the Motion to Suppress (DE # 16) be **DENIED**.

The parties will have fourteen calendar days from the date of service of this Report and Recommendation within which to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in chambers in Miami, Florida, on November 16, 2010.

*Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Ursula Ungaro,
    United States District Judge
All counsel of record via CM/ECF